1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    SYLVESTER CONWAY,                        No.  1:23-cv-00898-KES-SAB (PC)

12                Plaintiff,                    FINDINGS AND RECOMMENDATIONS
                                               REGARDING DEFENDANTS'
13          v.                                 EXHAUSTION MOTION FOR SUMMARY
                                               JUDGMENT AND MOTION FOR
14    J. MOUA, et al.,                         JUDGMENT ON THE PLEADINGS

15                Defendants.                   (ECF Nos. 27, 28)

16

17          Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant

18    to 42 U.S.C. § 1983.

19          Currently before the Court is Defendants' exhaustion motion for summary judgment and

20    motion for judgment on the pleadings, filed July 29, 2025 and July 31, 2025, respectively.  (ECF

21    Nos. 27, 28.)

22                                              **I.**

23                              **PROCEDURAL BACKGROUND**

24          This action is proceeding Plaintiff's excessive force claim against Defendants J. Moua,

25    Lopez, and Ortiz.  (ECF No. 20.)

26          Defendants filed an answer to the complaint on March 31, 2025.  (ECF No. 24.)

27          The discovery and scheduling order was issued on April 1, 2025.  (ECF No. 25.)

28          On July 29, 2025, Defendants filed an exhaustion motion for summary judgment.  (ECF

                                              1

1    No. 27.)  On July 31, 2025, Defendants filed a motion for judgment on the pleadings.  (ECF No.

2    28.)

3        Plaintiff filed an opposition to Defendants' motion for summary judgment on August 19,

4    2025.  (ECF No. 29.)  Defendants filed a reply on September 2, 2025.  (ECF No. 31.)  Plaintiff

5    did not file an opposition to Defendants' motion for judgment on the pleadings and the time to do

6    so has passed.  Local Rule 230(l).

7                                    **II.**

8                    **EXHAUSTION MOTION FOR SUMMARY JUDGMENT**

9        **A.    Statutory Exhaustion Requirement**

10        The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such

11    administrative remedies as are available" before commencing a suit challenging prison

12    conditions."   42 U.S.C. § 1997e(a); <u>see also</u> <u>Ross v. Blake</u>, 578 U.S. 632, 638 (2016) ("An

13    inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").

14    Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies

15    persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there

16    are no 'remedies … available,' and the prisoner need not further pursue the grievance."  <u>Brown v.</u>

17    <u>Valoff</u>, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing <u>Booth v. Churner</u>, 532

18    U.S. 731, 739 (2001)).

19        This statutory exhaustion requirement applies to all inmate suits about prison life, <u>Porter</u>

20    <u>v. Nussle</u>, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by

21    the prisoner or the relief offered by the process, <u>Booth v. Churner</u>, 532 U.S. at 741, and

22    unexhausted claims may not be brought to court, <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007) (citing

23    <u>Porter</u>, 534 U.S. at 524).

24        The failure to exhaust is an affirmative defense, and the defendants bear the burden of

25    raising and proving the absence of exhaustion.  <u>Jones</u>, 549 U.S. at 216; <u>Albino v. Baca</u>,  747 F.3d

26    1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of

27    the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  <u>Albino</u>, 747 F.3d at

28    1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they

                                      2

1   are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the

2   light most favorable to the plaintiff, shows he failed to exhaust.  Id.

3       **B.    Summary Judgment Standard**

4       Any party may move for summary judgment, and the Court shall grant summary judgment

5   if the movant shows that there is no genuine dispute as to any material fact and the movant is

6   entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino,

7   747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each

8   party's position, whether it be that a fact is disputed or undisputed, must be supported by (1)

9   citing to particular parts of materials in the record, including but not limited to depositions,

10  documents, declarations, or discovery; or (2) showing that the materials cited do not establish the

11  presence or absence of a genuine dispute or that the opposing party cannot produce admissible

12  evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may

13  consider other materials in the record not cited to by the parties, although it is not required to do

14  so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031

15  (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

16      The defendants bear the burden of proof in moving for summary judgment for failure to

17  exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available

18  administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.

19  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come

20  forward with evidence showing that there is something in his particular case that made the

21  existing and generally available administrative remedies effectively unavailable to him."  Id.  "If

22  the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to

23  exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However,

24  "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather

25  than a jury should determine the facts."  Id.

26      In arriving at this Findings and Recommendation, the Court carefully reviewed and

27  considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

28  facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of

3

1  reference to an argument, document, paper, or objection is not to be construed to the effect that

2  this court did not consider the argument, document, paper, or objection. This Court thoroughly

3  reviewed and considered the evidence it deemed admissible, material, and appropriate.

4      **C.    Allegations of Complaint**

5      On May 26, 2022, at about 1:00 a.m., officer Moua[1] went to Plaintiff's cell and demanded

6  one of his medical mattresses.[2]  Plaintiff asked him to look at his medical file on the computer to

7  see that medical gave him two mattresses.  Moua left and waited for Plaintiff to fall asleep and

8  then returned to Plaintiff's cell with two more officers.  Plaintiff was asleep and not a threat to

9  anyone when his cell door was opened and officer Moua went straight for Plaintiff's arm with the

10 broken collar bone and tried to yank him off his bunk by jerking his arm. When Moua was not

11 successful, officer Lopez then lifted the top mattress Plaintiff was sleeping on causing his head to

12 slam against the wall with his neck brace almost rendering Plaintiff unconscious.  Then officer

13 Ortiz slide the bottom mattress out and they walked out of Plaintiff's cell laughing.  After

14 Plaintiff's head cleared a little bit he went to his cell door and yelled for medical attention.

15 Officer Moua refused to call medical and gave Plaintiff a write-up.  Medical went to Plaintiff's

16 cell five days later, no x-rays were ordered, but his mattress was returned to him and he was given

17 stronger medication.  Plaintiff's pain continues to this day.

18     **D.    Statement of Undisputed Facts[3]**

19     1.    Plaintiff is currently an inmate at the Madera County Jail.  (Declaration of Valerie

20          Seaborn ("Seaborn Decl."), at pg. 2, ln. 14 ("2:14").

21     2.    Plaintiff was first incarcerated at Madera County Jail in early 2022 on a variety of

22          charges.  (Seaborn Decl., at 2:14-15.)

23     3.    At that time of Plaintiff's incarceration at Madera County Jail in early 2022, and

24

25 [1] Plaintiff erroneously identified Defendant Moua as "Muva."

26 [2] Plaintiff's second amended complaint alleges that the incident occurred on the night of May 25-26, 2022 (ECF No.
   11 at 4), his grievance filed with the Madera County Jail alleges the incident occurred in the early morning of May
27 24, 2022, and the grievance form is dated May 25, 2022.  (Seaborn Decl., Ex. B.)  Thus, Plaintiff may have been
   confused in either the operative complaint or grievance as to the exact date of the incident.

28 [3] Hereinafter referred to as "UF."

continuing through the present, all incoming inmates received a written inmate orientation packet containing various information pertaining to jail policies and procedures. This packet included information regarding the Jail's inmate grievance procedures. As an incoming inmate, Plaintiff would also have received this information.  (Seaborn Decl., at 2:15-19.)

4.    If the complaining inmate is unsatisfied with the supervising officer's response, he or she can then appeal that response for final administrative review by marking the "response appealed" box on the grievance form in the "supervisor's review" section.  The grievance will then be forwarded on to Administration for final administrative review within the Madera County Corrections Department ("Corrections Department").  (Seaborn Decl., at 3:3-6, Ex. A at 5.)

5.    If the inmate is unsatisfied with the response from administration, he or she can then file for writ relief in court.  (Seaborn Decl., at 3:7-8, Ex. A at 5.)

6.    This grievance procedure, including use of the same forms and the available levels of administrative review, has remained effectively unchanged during all times of Plaintiff's incarceration at Madera County Jail.  (Seaborn Decl., at 3:10-12.)

7.    The Corrections Department maintains records of all written grievance forms submitted by inmates.  (Seaborn Decl., at 3:13.)

8.    The first time Plaintiff filed a grievance regarding the subject of his lawsuit—i.e., his claim of excessive force that allegedly occurred in late May 2022—was dated May 25, 2022.  (Seaborn Decl., at 3:14-25, Ex. B.)

9.    Plaintiff filed another written grievance on or about February 9, 2023.  (Seaborn Decl., 3:20-21, Ex. C.)

10.    According to the inmate grievance form, Plaintiff appealed his February 9, 2023 grievance through all available levels of review.  (Seaborn Decl., at 3:23-25, Ex. C.)

///

///

5

1    **E.    Analysis of Defendants' Motion**

2         Defendants argue that Plaintiff submitted a written grievance on May 25, 2022, regarding

3    the mattress incident, but did not appeal the grievance beyond the initial officer's response.  Then,

4    on February 9, 2023, he filed another related written grievance regarding the mattress incident

5    which was appealed through all levels of administrative remedies.  However, because the

6    grievance was filed approximately eight and a half months after the incident, it was filed well

7    after the applicable fourteen-day deadline provided by the Madera County Jail's procedure.

8         In opposition, Plaintiff argues that he did not complete the requisite three levels of

9    administrative review of his initial May 25, 2022 grievance because he did not timely receive a

10   copy of the grievance form after it was denied at the first level of review.  (ECF No. 29 at 4.)

11   Rather, Plaintiff submits that he did not receive any response to his May 2022 grievance until

12   February 9, 2023, when it was slid under his cell door.  (Id.)  As a result, Plaintiff filed another

13   grievance in February 2023, regarding the mattress incident.  (Id.)

14        In response, Defendants argue that there is no evidentiary support for Plaintiff's

15   contention that he did not receive a response to his May 2022 grievance until February 2023.

16   Defendants submit the evidence demonstrates the May 25, 2022 grievance, and officer

17   Hernandez's response, were scanned into the Corrections Department's System by corporal

18   Elizabeth Alvarez on May 27, 2022.  (ECF No. 31-3, Declaration of Elizabeth Alvarez (Alvarez

19   Decl.) at 2:13-21.)  Thus, Plaintiff's filing of a new grievance in February 2023, did not satisfy

20   the exhaustion requirement because it was filed well after the fourteen-day filing deadline set

21   forth in the Department's policy and procedure.

22        Here, Defendants have met their initial burden of proof in demonstrating that Plaintiff

23   filed an initial grievance on May 25, 2022, regarding the mattress incident at issue in this action

24   and did not file an appeal within fourteen days thereafter.  The burden now shifts to Plaintiff "to

25   come forward with evidence showing that there is something in his particular case that made the

26   existing and generally available administrative remedies effectively unavailable to him." Albino,

27   747 F.3d at 1166.

28   ///

6

1    Plaintiff argues that he did not receive a response to his May 2022 grievance until

2    February 2023. Defendants argue that Plaintiff submits no evidence in support of his contention

3    besides his unsworn statement in his opposition.

4    Defendants initially object to that Plaintiff's opposition is not supported by an affidavit or

5    declaration signed under penalty of perjury. Although Plaintiff's opposition is signed, it is not

6    signed under penalty of perjury. (See ECF No. 29 at 6.) However, Plaintiff's statements

7    regarding when he received the grievance response is based on his own personal knowledge of

8    which he can testify to under penalty of perjury. Thus, the Court will consider the statements

9    therein in opposition to Defendants' motion for summary judgment. See, e.g., Cape v. San Luis

10   Obispo Sheriff Dep't., No. CV 21-6622-CJC(E), 2022 WL 2308256, at *4 (C.D. Cal. June 1,

11   2022), adopted, 2022 WL 2304289 (C.D. Cal. June 27, 2022) (noting the lack of clarity on the

12   issue, but finding the court may consider unsworn factual statements made by plaintiff in

13   complaint and concise brief based on personal knowledge that are admissible through his

14   testimony at trial.); see also Rosenfeld v. Mastin, No. CV 11-7002-DOC, 2013 WL 5705638, at

15   *5 (C.D. Cal. Oct. 15, 2013) (holding that the court should  consider unsworn statements made by

16   the plaintiff in the pleadings and summary judgment opposition where he had personal knowledge

17   of the content of the statements.)[4]

18   Defendants further argue that Plaintiff's factual allegations are only supported by

19   Plaintiff's own statement. (ECF No. 31 at 4.) However, not all self-serving declarations are per

20   se unable to establish a genuine issue of material fact. "[D]eclarations are often self-serving, and

---

[4] Indeed, "at the summary judgment stage, [the court does not] focus on the admissibility of the evidence's form" but rather "on the admissibility of its contents." Sandoval v. County of San Diego, 985 F.3d 657, 666 (9th Cir. 2021) (citation and quotations omitted); Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003); Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.") (citation omitted); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); Fed. R. Civ. P. 56, Advisory Committee Notes, 2010 Amendment ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."). Thus, "[e]vidence may be offered 'to support or dispute a fact' on summary judgment only if it could be presented in an admissible form at trial." Southern California Darts Ass'n v. Zaffina, 762 F.3d 921, 925-26 (9th Cir. 2014) (citing Fraser v. Goodale, 342 F.3d 1032) (internal quotations omitted); see also Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 846 (9th Cir. 2004).

1    this is properly so because the party submitting it would use the declaration to support his or her

2    position." Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497 (9th Cir. 2015).  If a declaration

3    contains factual information based on personal knowledge, the declaration is properly considered

4    as evidence on a motion for summary judgement. Thomas v. Kuo, No. 1:16-cv-00524 DAD EPG

5    P, 2019 WL 2369898, at *13 (E.D. Cal. June 5, 2019).  It is self-serving conclusory statements

6    which are insufficient to establish a genuine issue of fact.  Nigro, 784 F.3d at 497 ("The district

7    court can disregard a self-serving declaration that states only conclusions and not facts that would

8    be admissible evidence.").

9         Defendants submit the declarations of officer Hernandez and corporal Alvarez to support

10   their argument that Plaintiff received a timely response to his May 25, 2022 grievance.  (ECF No.

11   31-2, 31-3.)  Officer Hernandez declares that he responded to and denied Plaintiff's May 25, 2022

12   grievance the next day, May 26, 2022.  (Hernandez Decl. at 2:12-17.)  Corporal Alvarez then

13   electronically scanned the grievance, and Hernandez's response, into the Department's system on

14   May 27, 2022, and placed the grievance form in the module box for distribution that same day.

15   (Alvarez Decl. at 2:17-21.)  Officer Hernandez then distributed the grievance form, with his

16   response, to Plaintiff's during Hernandez's shift on May 27, 2022, as was his custom and

17   practice.  (Hernandez Decl., at 2:18-22.)

18        Based on the parties' evidence, viewed in the light most favorable to Plaintiff, there is a

19   dispute as to when Plaintiff received the response to his May 2022 grievance, and Plaintiff has

20   met his burden of proof under Albino.  Consequently, the burden now shifts to Defendants to

21   meet their ultimate burden of proof of nonexhaustion under the PLRA.  Albino, 747 F.3d at 1172.

22        Defendants argue that Plaintiff's attempt to file a new grievance regarding the "mattress"

23   incident in February 2023, fails to satisfy his exhaustion obligations because it was filed long

24   after the fourteen-day filing deadline set forth in the Department's policies and procedures.

25   Indeed, Defendants do not dispute that Plaintiff filed a grievance in February 2023, which grieved

26   the claim at issue in this action, and was exhausted through all levels of review.

27        Even assuming the February 2023 grievance was untimely and such procedural defect

28   would generally foreclose an action for nonexhaustion under the PLRA, "when prison officials

8

1  opt not to enforce a procedural rule but instead decide an inmate's grievance on the merits, the

2  purposes of the PLRA exhaustion requirement have been fully served." Reyes v. Smith, 810 F.3d

3  654, 659 (9th Cir. 2016). "Accordingly, ... a prisoner exhausts [available administrative

4  remedies] under the PLRA despite failing to comply with a procedural rule if prison officials

5  ignore the procedural problem and render a decision on the merits of the grievance at each

6  available step of the administrative process." Id.

7         Defendants do not dispute that the February 2023 grievance raised the claim at issue in

8  this case and that prison officials addressed the merits of Plaintiff's grievance at the final step of

9  the administrative process.  The Madera County Jail responded to the merits of the February 2023

10  at both the supervisor level and final administrative review level.  (ECF No. 29 at 8.)   Any

11  timeliness objections are thus waived, as the Jail "had the opportunity to address the grievance

12  and correct their own errors and an administrative record has been developed." Reyes, 810 F.3d at

13  657; see also Develder v. Hirshler, No. 2:09-cv-1803 TLN EFB P, 2017 WL 3868478, at *5 (E.D.

14  Cal. Sept. 5, 2017) (noting several cases which have found that prison officials waive the right to

15  reject a prisoner's technically deficient grievance if they processed such grievance); Bradley v.

16  Williams, No. CIV. 07-1870 HU, 2009 WL 198014, at *2 (D. Or. Jan. 23, 2009); ("[T]his court

17  finds that defendants waived their right to reject plaintiff's grievance by responding to the

18  defective grievance"); Hammett v. Cofield, 681 F.3d 945, 947 (8th Cir. 2012) ("the PLRA's

19  exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on

20  the merits"); Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) ("[W]here the institution treats

21  the filing as timely and resolves it on the merits....the grievance has served its function of inviting

22  prison administrators to take corrective action, and thus the administrative exhaustion

23  requirement has been satisfied").  In sum, because "prison officials address[ed] the merits of [his]

24  grievance instead of enforcing a procedural bar," Plaintiff exhausted his administrative remedies

25  as to his claim against Defendant(s). See Reyes, 810 F.3d at 657; see also Holden v. Nevada ex

26  rel. Nev. Dep't of Corr., No. 3:16-CV-00064-MMD-WGC, 2018 WL 4566253, at *9 (D. Nev.

27  Sept. 24, 2018) (waivable procedural bars include the timeliness of a grievance).  Under these

28  circumstances, the Court finds that the Jail's response to the untimely grievance waived

1    Defendants' timeliness exhaustion defense.

2                                      **III.**

3                    **MOTION FOR JUDGMENT ON THE PLEADINGS**

4        **A.    Standard of Review**

5        Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but

6    early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ.

7    P. 12(c). "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6)

8    because, under both rules, a court must determine whether the facts alleged in the complaint,

9    taken as true, entitle the plaintiff to a legal remedy." Chavez v. U.S., 683 F.3d 1102, 1108 (9th

10   Cir. 2012) (internal quotation marks and citation omitted). The Court "must accept all factual

11   allegations in the complaint as true and construe them in the light most favorable to the non-

12   moving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the

13   pleadings is properly granted when there is no issue of material fact in dispute, and the moving

14   party is entitled to judgment as a matter of law." Fleming, 581 F.3d at 925.

15       In ruling on a motion for judgment on the pleadings, a district court may "consider

16   certain materials—documents attached to the complaint, documents incorporated by reference in

17   the complaint, or matters of judicial notice—without converting the motion to dismiss [or motion

18   for judgment on the pleadings] into a motion for summary judgment." United States v. Ritchie,

19   342 F.3d 903, 908 (9th Cir. 2003); see also Summit Media LLC v. City of Los Angeles, 530

20   F.Supp.2d 1084, 1096 (C.D. Cal. 2008). Further, the court may consider the full text of

21   documents referred to in the complaint without converting the motion to a motion for summary

22   judgment, provided that the document is central to plaintiff's claim and no party questions the

23   authenticity of the document. Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). Also, extrinsic

24   evidence that is subject to judicial notice may be properly considered in a Rule 12(c) motion.

25   Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n. 18 (9th Cir. 1999).

26       **B.    Analysis of Defendants' Motion**

27       Defendants argue that Plaintiff's claim is barred by the doctrine of res judicata.

28       The doctrine of res judicata, or claim preclusion, "bars repetitious suits involving the same

                                       10

cause of action once a court of competent jurisdiction has entered a final judgment on the merits."

United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011) (citation and internal

quotation marks omitted). Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, a

federal court must give a state court judgment the same preclusive effect as the state court

judgment would receive by another court of that state. See 28 U.S.C. § 1738; Maldonado v.

Harris, 370 F.3d 945, 951 (9th Cir. 2004) ("28 U.S.C. § 1738 generally requires federal courts to

give state court judgments the same res judicata effect that they would be given by another court

of that state."). The Ninth Circuit has made it clear that a section 1983 claim brought in federal

court is subject to principles of issue and claim preclusion by a prior state court judgment. See

Gonzales v. Cal. Dep't. of Corr., 739 F.3d 1226, 1231 (9th Cir. 2014) (holding that "reasoned

denials of California habeas petitions" have claim-preclusive effect on subsequent civil

litigation); Silverton v. Dep't of Treasury, 644 F.2d 1341, 1347 (9th Cir. 1981) ("we hold that

because of the nature of a state habeas proceeding, a decision actually rendered should preclude

an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court

afforded a full and fair opportunity for the issue to be heard and determined under federal

standards."). California's claim preclusion law therefore governs whether Plaintiff's § 1983 claim

may be brought in federal court. Furnace v. Giurbino, 838 F.3d 1019, 1023 (9th Cir. 2016); see

also Anderson v. Mendoza, No. 2:17-cv-1244-KJM-DB P, 2018 WL 6528429, at *3 (E.D. Cal.

Dec. 12, 2018) ("California claim preclusion law governs whether, in light of his earlier state

habeas petition, plaintiff's § 1983 claims may be brought in federal court.").

In Furnace, the Ninth Circuit held that a petition for writ of habeas corpus filed in

California state court can have a claim preclusive effect on a subsequent section 1983 action if the

second suit involves: (1) the same cause of action (2) between the same parties or parties in

privity with them (3) after a final judgment on the merits in the first suit. 838 F.3d at 1023.

California courts employ the primary rights theory to determine what constitutes the same

cause of action for claim preclusion purposes, and under this theory, a cause of action is (1) a

primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the

defendant, and (3) a harm done by the defendant which consists in a breach of such primary right

1  and duty. Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009) (citing City of Martinez v.

2  Texaco Trading & Transp., Inc., 353 F.3d 758, 762 (9th Cir. 2003)). If two actions involve the

3  same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at

4  stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different

5  forms of relief and/or adds new facts supporting recovery. Id. (quoting Eichman v. Fotomat

6  Corp., 147 Cal. App. 3d 1170, 1174 (1983)).

7  　　　"California's claim preclusion case law...prevents relitigation 'between the same parties or

8  parties in privity with them.' " Furnace, 838 F.3d at 1028 (quoting DKN Holdings LLC v.

9  Faerber, 61 Cal. 4th 813, 824 (2015)). Privity is a legal conclusion which designates a person "so

10 identified in interest with a party to former litigation that he represents precisely the same right"

11 being adjudicated. In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997) (quoting Southwest

12 Airlines Co. v. Texas Int'l Airlines, Inc., 546 F.2d 84, 94 (5th Cir. 1977)); Nordhorn v. Ladish

13 Co., 9 F.3d 1402, 1405 (9th Cir. 1993) ("[W]hen two parties are so closely aligned in interest that

14 one is the virtual representative of the other, a claim by or against one will serve to bar the same

15 claim by or against the other.") (citation omitted).

16 　　　"A judgment is on the merits for purposes of res judicata if the substance of the claim is

17 tried and determined." Johnson v. City of Loma Linda, 24 Cal. 4th 61, 77 (2000) (citation and

18 internal quotation marks omitted).

19 　　　Here, as an initial matter, Defendants' request for the Court to take judicial notice of the

20 Madera County Superior Court's denial of Plaintiff habeas petition, is granted.  (ECF No. 28-2.);

21 See Fed. R. Evid. 201(b); United States ex. Rel. Robinson Rancheria Citizens Counsel v. Borneo,

22 Inc., 971 F.2d 244, 248 (9th Cir. 1992) Courts judicially notice other court proceedings "if those

23 proceedings have a direct relation to the matters at issue.") (citations and internal quotation marks

24 omitted).[5]

25 ///

26

27 　　　——————————
   [5] Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable
   dispute" because they are either "generally known within the trial court's territorial jurisdiction," or they "can be
   accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.
28 201(b).

1    Plaintiff filed a petition for writ of habeas corpus on April 23, 2023, in the Madera County

2    Superior Court case number MCR077140.  (ECF No. 28-2, Ex. A.)  Therein, Plaintiff alleged that

3    his civil rights were violated when jail officials used force to remove a second mattress from

4    Plaintiff's cell which was originally provided to Plaintiff due to his preexisting injuries.  (Id., Ex.

5    A at 2-7.)  After directing a response, the Madera County Counsel filed a response to Plaintiff's

6    habeas petition, and Plaintiff filed a reply.  (ECF No. 28-2, Exs. B, C. D.)

7    On October 5, 2023, the Madera County Superior Court issued an order denying

8    Plaintiff's habeas petition.  (Id., Ex. E.)

9    Plaintiff filed the instant civil rights complaint on June 14, 2023.  (ECF No. 1.)  The

10   operative second amended complaint raises substantially identical facts as raised in the habeas

11   petition.  (ECF No. 11 at 3-5.)  Indeed, the second amended complaint notes that that it is based

12   on the same factual circumstances as Plaintiff's state court habeas petition, stating "[a]t each level

13   [sic] my complant [sic] was turned down. I then filed a Habeus [sic] Corpus. My Habeus [sic]

14   Corpus is now going thru [sic] the court system. Case No. MCR077140."  (ECF No. 11, at 2.)

15   Plaintiff's state court habeas petition was indeed filed and pending in the Madera County

16   Superior Court. (ECF No. 28-2, Ex. A.)  As previously stated, a petition for writ of habeas corpus

17   filed in California state court can have a claim preclusive effect on a subsequent section 1983

18   action if the second suit involves: (1) the same cause of action (2) between the same parties or

19   parties in privity with them (3) after a final judgment on the merits in the first suit.  Furnace, 838

20   F.3d at 1023.  All three elements are met in this instance.

21   In the state petition, Plaintiff alleged as follows:

22   On 2-7-22 I was brouth [sic] from a hospital to Madera County Jauil.  I had 2 broken
     bones in my neck, two broken ribs, a broken collar bone and a chipped shoulder blade.
23   They told me that I would go directly to the Jail's hospital: instead, they took me to
     solaterie [sic] lockup. The hole, and kelp [soc] me in the hold for six months.  On my neck
24   was a neck brace and a arm sling. Medical gave me two mattress when they book me in to
     the Jail.  3 officer came in my cell about 4 in the morning after I was in the hold about 4
25   months.  Officer Mova grab[b]ed my shoulder arm another officer lifted my feet up on the
     first mattress slamming my head ag[a]inst the wall knocking me senseless, I[t] took about
26   two minutes before my head cleared.  My neck was already akeing [sic] and my shoulder,
     but after they attack me for the mattress, [i]t was like I broken [sic] them all over ag[a]in.
27   I mannege [sic] to make my way to the door, so I started knocking on my door asking for

28

13

1
2
3

> medical help.  But he just sit the writing me up with a write up, medical did not come for a another three or four days, and they returned my mattress and relised [sic] me from sol[i]tary confindment [sic] after six months and I did not brake [sic] no rules to be locked up in the hole in the first place, when my head hit that concrete wall I haven't been able to turn my head all the way to the right.

4
5
6
7
8
9
10
11
12

(ECF No. 28-2, Ex. A.)  In the operative second amended complaint, Plaintiff alleges on May 26, 2022, at about 1:00 a.m., officer Moua went to Plaintiff's cell and demanded one of his medical mattresses.  Plaintiff asked him to look at his medical file on the computer to see that medical gave him two mattresses.  Moua left and waited for Plaintiff to fall asleep and then returned to Plaintiff's cell with two more officers.  When Moua was not successful, officer Lopez then lifted the top mattress while Plaintiff was sleeping on causing his head to slam against the wall with his neck brace almost rendering Plaintiff unconscious.  Then officer Ortiz slide the bottom mattress out and they walked out of Plaintiff's cell laughing.  (ECF No. 11 at 3-5.)  Thus, Plaintiff's second amended complaint is based on identical facts as his state court habeas petition.

13
14
15
16
17
18
19
20

Both actions involved the same parties or their privies.  Leon v. IDX Systems Corp., 464 F.3d 951, 963 (9th Cir. 2006).  In this action, Defendants are three correctional officers, all employees of the Madera County Jail.  (ECF No. 1.)  In the habeas case, the Madera County Jail was the real party in interest. (ECF No. 28-2, Ex. A.)  Thus, Defendants in this action are Madera County employees and their alleged liability arises out of their alleged wrongdoing as County employees. They are therefore in privity with the Madera County Jail for purposes of claim preclusion.[6]  Because the Madera County Jail was the respondent in Plaintiff's state court habeas petition, the second element of claim preclusion is satisfied.

21
22
23

Lastly, Plaintiff was afforded a full and fair opportunity to be heard on his state court habeas petition, as County Counsel filed a response, Plaintiff filed a reply, and the state court denied the petition for the reasons stated in the County's response.  (ECF No. 28-2, Ex. A.)

24
25

Accordingly, Plaintiff's second amended complaint is barred by the doctrine of res judicata and Defendants' motion for judgment on the pleadings should be granted.

26

27
28

---

[6] See Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 403 (1940) (The most important consideration is "whether or not in the earlier litigation the representative of the [party] had authority to represent its interests in a final adjudication of the issue in controversy."); see also, Fund for Animals v. Lujan, 962 F.2d 1391, 1398 (9th Cir.1992).

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' exhaustion motion for summary judgment, filed July 29, 2025, (ECF No. 27) be DENIED; and

2.      Defendants' motion for judgment on the pleadings, filed July 31, 2025, (ECF No. 28) be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 5, 2025**

STANLEY A. BOONE
United States Magistrate Judge

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28